## STROUD v. SMITH.

### No. 3298.

Court of Civil Appeals of Texas. Beaumont,
July 1, 1938.

Rehearing Denied Sept. 20, 1938.

K. W. Denman and Ned Shands, Jr.,
both of Lufkin, and M. M. Feagin, of
Livingston, for appellant.

N. B. D. Bailey, of Center, and Campbell & Foreman, of Livingston, for appellee.

WALKER, Chief Justice.

This is a venue case. Appellee's action against appellant was for damages for injuries suffered by him, caused by the negligent act of appellant's servant in driving his truck into and against appellee's Ford automobile, on the afternoon of the 29th day of October, 1935, in Polk County. The plea of privilege was in due form. By his controverting affidavit, appellee plead "trespass", and to sustain his venue in Polk County invoked Sec. 9 of Art. 1995, R.C.S.; he charged appellant with negligence in operating his truck, immediately prior to the collision, "at a high and reckless rate of speed, to-wit, 50 miles per hour", in failing to keep a "proper lookout", in failing to "sound his horn", etc. From the judgment of the lower court, overruling his plea of privilege, appellant has prosecuted his appeal to this court.

We quote the following testimony of the witnesses (questions and answers reduced to narrative):

Plaintiff, M. C. Smith, testified: "I live in Wakefield, Shelby county, having moved there from Polk county in 1935. I went to Corrigan in Polk county on October 29, 1935, leaving there tolerable late that day, traveling home on highway 35, North to Wakefield community, west of highway 35. I was traveling in a 1924 Model Ford 'hoopie' which I had owned 12 or 13 years. I was driving and throwed my hand out about 75 yards before I turned off highway 35 onto the Wakefield road, and kept it there until I turned off the highway. Something hit me as I was getting off the asphalt, they said it was a truck, I wasn't dreaming about anything hitting me, I didn't hear any horn or other sound. My hearing was good at that time, if a horn blew I didn't hear it, I didn't know anything was behind me until my brother hollered, 'Look out; there is a truck going to hit you.' That is the last I knew. My brother, Harm Smith, was killed. The place of the accident was in Polk County. It was daytime, late in the evening, the sun was shining. The road is straight a long ways, a quarter or maybe a mile. The Wakefield road was a plainly visible road over which people constantly traveled. My head, shoulders and hips were injured; sometimes I can't hardly go—my head hurts and gets hot and I can't —. The last thing I knew was after they carried me home. The road is asphalt, the usual width with shoulders, is level and wide. From the asphalt to the bank is 16 or 20 feet. My Ford was torn all to pieces and is still that way. It was struck on the left wheel and bumper."

The witness, Buford Smith, testified: "My name is Buford Smith, my uncle is M. C. Smith and my father was Harm Smith. I remember the wreck in which my father was killed. My father and I and, Uncle Matt (M. C. Smith) had been to Corrigan and about five o'clock started home North of Corrigan on highway 35, traveling about 15 miles an hour. About six miles north of Corrigan, on the Wakefield road, while Uncle Matt was driving, my father sitting on the front seat and I was laying down in the car about half asleep, I heard my father holler, 'Look out', and we were off the highway on the left hand side, three or four feet off the asphalt, when a truck hit us. The car stopped 8 or 10 steps upon the bank between the two roads and with the car facing back the way we came, having rolled over and set up again, turned half around with the back end torn from under it and the wheel broken up. I was thrown out and stopped 45 or 50 feet down the ditch, by the side of the highway. Uncle Matt was behind the car (as then sitting) and my father was in the ditch along there. The truck stopped 95 or 100 steps from where it hit the car, and Reynolds was driving the truck. I don't remember his given name, the trailer jumped its front bolster and turned over, traveling and turning over between the ditch bank and the asphalt. The tracks showed the truck was traveling at the time it hit the car with its left wheel off the asphalt and the right wheel on the edge of the asphalt on the left side of the highway. My father's head and chest were crushed, he died and Uncle Matt's head was hurt. Mr. Stroud told me that it was his truck and his driver, and that the driver was hauling cotton somewhere around Houston, Mr. Stroud said he was hauling the cotton for him and that it was his truck. This happened in Polk County, on the 29th of October, 1935. I didn't hear the truck sound any horn or noise. The driver came back but didn't say anything, but he flagged a ride and phoned an ambulance."

There was no testimony of any specific speed of the truck. But on the facts and circumstances in evidence, the issue was raised, and in support of the judgment we resolve it in favor of appellee, that appellant was operating his truck at a high and dangerous rate of speed, and in excess of the speed allowed by law. Vernon's Ann.Civ.St. art. 827a, §

8. One of the passengers in the car was thrown 45 or 50 feet by the force of the collision; a second passenger in the car was killed; the Ford automobile was wrecked; after striking the Ford automobile, the truck traveled 95 or 100 steps before coming to a stop. These facts would sustain any rate of speed, within reason, that the court might have found against the operator of the truck.

That the evidence raised against the operator of the truck the issue of "actionable negligence" is not controverted by appellant; his controlling point is that the evidence did not raise the issue of "active negligence". The facts deny that contention.

In view of what we have said, it would serve no useful purpose to review appellant's assignment that his failure "to sound his horn" constituted "passive" and, not "active" negligence; hence, was not a trespass.

The judgment of the lower court should be in all things affirmed, and is accordingly so ordered.